253710690

not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

VMP-6(CA) (0207)     Page 11 of 15     Initials: _PC_     Form 3005 1/01

253710690

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0207)      Page 12 of 15      Initials: *PC*      Form 3005 1/01

Case: 10-60223   Doc# 41-1   Filed: 06/06/14   Entered: 06/06/14 15:18:20   Page 2 of 20

253710690

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _P C_

-6(CA) (0207)  Page 13 of 15  Form 3005 1/01

253710690

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_____		_____ (Seal)
										PAUL CHIPREZ				-Borrower

_____		_____ (Seal)
															-Borrower

_____ (Seal)	_____ (Seal)
-Borrower							-Borrower

_____ (Seal)	_____ (Seal)
-Borrower							-Borrower

_____ (Seal)	_____ (Seal)
-Borrower							-Borrower

-6(CA) (0207)				Page 14 of 15				Form 3005 1/01

Case: 10-60223   Doc# 41-1   Filed: 06/06/14   Entered: 06/06/14 15:18:20   Page 4 of 20

253710690

State of California  
County of Santa Clara } ss.

On November 7, 2006 before me, Sheila Meinecke, Notary Public
personally appeared

PAUL CHIPREZ

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*[Notary seal: SHEILA MEINECKE, COMM. #1536722, Notary Public - California, Santa Clara County, My Comm. Expires Dec. 19, 2008]*

_____ (Seal)

Initials: PC

VMP®-5(CA) (0207)  Page 15 of 15  Form 3005 1/01

253710690  **ADJUSTABLE RATE/BALLOON RIDER**
(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 7th day of NOVEMBER, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

NATIONSTAR MORTGAGE LLC

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1638 WHITTON AVENUE
SAN JOSE, CA 95116

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 8.300 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the 15th day of NOVEMBER, 2008, and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first

Case: 10-60223   Doc# 41-1   Filed: 06/06/14   Entered: 06/06/14 15:18:20   Page 6 of 20

253710690

business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FIVE AND 680/1000** percentage point(s) ( 5.680 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date based on the remaining term of the scheduled 40 year amortization period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.300 % or less than 8.300 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND 500/1000** percentage points(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.300 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any questions I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICAL INTEREST IN BORROWER Uniform Covenant 17 of the Security Instrument is ammended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information

Adjustable Rate/Balloon Rider - LIBOR 6 Month Index
CE840U2 (092806)   Page 2 of 3

253710690

required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The term of the loan is 360 months. As a result, you will be required to repay the entire principal balance and any accrued interest then owing 360 months from the date on which the loan is made.

The Lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of assets you own or you may have to find another Lender willing to refinance the loan.

Assuming this Lender or another Lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time and such rates may be higher than the interest rate on this loan. You may also have to pay some or all of the closing costs normally associated with a new mortgage loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate/Balloon Rider.

_____ (Seal)  _____ (Seal)
PAUL CHIPREZ           -Borrower                          -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                          -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                          -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                          -Borrower

Adjustable Rate/Balloon Rider - LIBOR 6 Month Index
CE840U3 (092205)                          Page 3 of 3

Case: 10-60223   Doc# 41-1   Filed: 06/06/14   Entered: 06/06/14 15:18:20   Page 8 of 20

# EXHIBIT "C"

# Nationstar MORTGAGE

P.O. BOX 60516
CITY OF INDUSTRY, CA 91716-0516

## MORTGAGE LOAN STATEMENT

**CONTACT INFORMATION**
Customer Service: 1-888-480-2432
Monday - Thursday; 8 a.m. - 9 p.m. CT
Friday; 8 a.m. - 6 p.m. CT and Saturday; 8 a.m. - 2 p.m. CT
MyNationstar.com

4-692-90550-0002466-001-000-000--

PAUL CHIPREZ
1638 WHITTON AVE
SAN JOSE CA 95116-2454

| | |
|---|---|
| Statement Date: | 04/09/2014 |
| Loan Number: | 0253710690 |
| Payment Due Date: | 05/01/2014 |
| **Amount Due:** | **$1,103.16** |

*If payment is received on or after 05/12/14; $47.84 late fee will be charged.*

### Account Information

| | |
|---|---|
| Interest Bearing Principal Balance | $282,142.70 |
| Non-Interest Bearing Principal Balance | $118,374.26 |
| Interest Rate (Until 04/01/2015) | 2.000% |
| Escrow Balance | $212.91 |
| Prepayment Penalty* | |

*Nationstar Mortgage LLC will not assess a prepayment penalty at any time in the event you would like to pay part or all of your mortgage balance.

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

### Explanation of Amount Due

| | |
|---|---|
| Principal | $486.49 |
| Interest | $470.24 |
| Escrow Amount (for Taxes & Insurance) | $146.43 |
| Optional Products and Services | $0.00 |
| **Regular Monthly Payment** | **$1,103.16** |
| Total Fees and Charges | $0.00 |
| Overdue Payment(s) | $0.00 |
| **Total Amount Due** | **$1,103.16** |

### Past Payment Breakdown

| | Payments Rec'd since 03/13/2014 | Paid Year to Date |
|---|---|---|
| Principal | $485.68 | $1,937.88 |
| Interest | $471.05 | $1,889.04 |
| Escrow (Taxes & Insurance) | $146.43 | $585.72 |
| Optional Insurance | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $9.95 |
| Lender Paid Expenses | $0.00 | $0.00 |
| Partial Payment (Unapplied)** | $0.00 | $0.00 |
| **Total** | **$1,103.16** | **$4,422.59** |

### Transaction Activity (03/13/2014 to 04/09/2014)

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 04/08/2014 | Payment | $1,103.16 | $485.68 | $471.05 | $146.43 | |

### Important Messages  (See Reverse side for Additional Critical Notices)

As a participant in the Making Home Affordable Modification Program, you qualify to earn Pay for Performance Incentives for the first five years of your modification. To earn these Incentives, you accrue $83.33 for each month that your account is current for a maximum of $1,000.00 annually. Earned Incentives will be applied to your mortgage loan as a principal payment in the month following the anniversary of the trial effective date as long as your loan is in good standing. If you have any questions or would like more information, please visit our website at MyNationstar.com or call us at 1-888-480-2432.

You can make your payment online at MyNationstar.com. There is no charge for this service if you schedule your payment within 9 days past your due date.

---

This is an attempt to collect a debt and any information obtained will be used for that purpose.
DETACH HERE AND RETURN WITH YOUR PAYMENT. PLEASE ALLOW A MINIMUM OF 7 TO 10 DAYS FOR POSTAL DELIVERY

# Nationstar MORTGAGE
MyNationstar.com

[ ] PLEASE CHECK BOX IF MAILING ADDRESS OR PHONE NUMBER HAS CHANGED. ENTER CHANGES ON BACK OF COUPON.

PAUL CHIPREZ

NATIONSTAR MORTGAGE
PO BOX 60516
CITY OF INDUSTRY, CA 91716-0516

| ACCOUNT NUMBER | TOTAL AMOUNT DUE* |
|---|---|
| 0253710690 | 05/01/2014  $1,103.16 |

| WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO NATIONSTAR MORTGAGE | PAYMENT DUE IF RECEIVED ON OR AFTER |
|---|---|
| | 05/12/2014  $1,151.00 |

ADDITIONAL ESCROW  $ _____
**ADDITIONAL PRINCIPAL  $ _____

TOTAL AMOUNT OF YOUR CHECK [_____]
DO NOT SEND CASH

**All amounts must be paid in full before additional principal reduction can be made.

0253710690903 000110316 000115100

# EXHIBIT "D"

RECORDING REQUESTED BY
NEW CENTURY TITLE COMPANY
RECORDING REQUESTED BY AND

WHEN RECORDED MAIL TO:
Residential Capital Mortgage Income Fund, LLC
4870 Viewridge Avenue, Suite 100
San Diego, CA 92123

DOCUMENT: 19404789

Pages: 3
Fees... 24.00
Taxes...
Copies .
AMT PAID 24.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 003
4/30/2007
10:58 AM

SPACE ABOVE THIS LINE

Loan No. 2007040201
Title Order No. 4070975

# LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS FOR
## HOME EQUITY REVOLVING LINE OF CREDIT

**THIS DEED OF TRUST** made this 17 day of April, 2007 between Paul Chiprez herein called **TRUSTOR**, whose address is:
1638 Whitton Ave. , San Jose , CA  95116 California
Number and Street    City    Zip Code

New Century Title Co., a California corporation, herein called **TRUSTEE** and Residential Capital Mortgage Income Fund, LLC, CFL License No. 603 9952, whose address is 4870 Viewridge Ave #100, San Diego, CA 92123, herein called **BENEFICIARY**.

**Witnesseth,** That TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE that property in Santa Clara County, California described ss (the "Property"):
1638 Whitton Ave. , San Jose , CA 95116

See Exhibit "A", attached hereto and incorporated herein by reference

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Beneficiary in Paragraph 10 below to collect and apply such rents, issues and profits.

FOR THE PURPOSE OF SECURING:
(A) Performance of each agreement of Trustor contained in this Deed of Trust.
(B) Payment of the indebtedness evidenced by a Home Equity Credit Line Revolving Loan Agreement (hereinafter referred to as "AGREEMENT") of even date herewith in the initial principal amount of **$34,110.82**, but subject to increase to a maximum of **$45,200.00**, executed by Trustor in favor of Beneficiary or order, and any extension or renewal thereof. The AGREEMENT is a revolving line of credit enabling the Trustor to redraw sums previously repaid, to be secured hereby, pursuant to the terms of the AGREEMENT and this Deed of Trust.
STATEMENT OF OBLIGATION: Beneficiary may collect the then-maximum fee provided by Section 2943 of the California Civil Code for furnishing a statement of obligation.
TRANSFER: If Trustor voluntarily sells or conveys the above-described Property, fully or partially, or any interest in it or, by some act or means divest themselves of title to the Property without obtaining the written consent of Beneficiary, Trustor shall be in default and Beneficiary may, at its option, declare the entire unpaid balance of the loan and accrued but unpaid interest immediately due and payable.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR ALSO AGREES:
(1) To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said Property or requiring any alteration or improvement to be made thereon; not to commit or permit waste thereon; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said Property may be reasonably necessary, the specific enumeration herein not excluding the general.
(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to it and with loss payable to Beneficiary. The amount collected under any first or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.
(3) To appear in and defend any action or proceeding purporting to alter the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including costs of evidence of title and attorney's fees in a reasonable sum in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to enforce this Deed of Trust.
(4) To pay at least ten days before delinquency all taxes and assessments affecting said Property, including assessments on appurtenant water stock, when due, all encumbrances, charges and liens, with interest, on said Property or any part thereof, which appear to be prior to or superior hereto; and all costs, fees and expenses of this Trust. Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said Property for such purpose, appear in and defend any action or proceeding purport to affect the security hereof or the rights or powers of Beneficiary or Trustor, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be proper or superior hereto, and in exercising any such power, pay necessary expenses, employ counsel and pay his reasonable fees.
(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with FINANCE CHARGES from date of expenditure at the applicable Annual Percentage Rate in the AGREEMENT, and to pay for any statement provided by laws in effect at the date hereof regarding the obligation secured hereby any amount demanded by Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.
(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.
(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.
(8) That at any time and from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and said AGREEMENT for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said Property; consent to the making of any map or plat thereof; join in granting any easement thereon or join in any extension agreement or any agreement subordinating the lien or charge hereof.

*PAC*
Initials

Case: 10-60223   Doc# 41-1   Filed: 06/06/14   Entered: 06/06/14 15:18:20   Page 12 of 20

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said AGREEMENT to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters of fact shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as, "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said AGREEMENT and the Deed of Trust unless directed in such request to retain them.

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said Property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person or by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said Property or any part hereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including attorney's fees upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said Property, the collection of such rents, issues and profits and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor under the AGREEMENT, Beneficiary may declare all sums secured hereby immediately due and payable by delivering to Trustee a written declaration of default and demand for sale and a written notice of default and election to cause to be sold said Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the AGREEMENT and all documents evidencing expenditures secured herein. After the lapse of such time as may then be required by law following recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand upon Trustor, shall sell the Property at the time and place fixed by or in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of Sale. Trustee may postpone sale of all or any portion of said Property by public announcement at the time fixed by the preceding postponement. Trustor shall deliver to such purchaser its deed conveying the Property, but without covenant or warranty, express or implied. The recitals in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary, as hereinafter defined, may purchase at such sale. After deducting all costs, fees and expenses of Trustor and of this Trust, including costs of evidence of title in connection with sale, Trustor shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued FINANCE CHARGES at the applicable Annual Percentage Rate in the AGREEMENT; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary or any successor in ownership of any indebtedness secured hereby, may from time to time, in an instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instruments executed by Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page when this Deed of Trust is recorded and the name and address of the new Trustee.

(13) That this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary means the owner and holder, including pledgees, of the AGREEMENT secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereof of a pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) If this Deed of Trust is secured by condominium, community apartment, stock cooperative leasehold or planned unit development, Trustor agrees to comply with all recorded declaration of covenants, conditions and restrictions, association bylaws, and association rules and regulations, and, upon written request from Beneficiary, to enforce the same as against other owners in such developments.

(16) If the Deed of Trust is secured by a lease, Trustor agrees not to amend, change, modify or waive his or her interest therein, or agree to do so or to breach the lease without the written consent of Beneficiary. If this covenant is breached and the security for this Deed of Trust is materially and adversely affected, Beneficiary shall have the option to declare all sums owed under the AGREEMENT and this Deed of Trust, immediately due and payable in full.

TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ON THE FRONT OF THIS DEED OF TRUST.

SIGNATURES OF TRUSTOR(S):

_____   _____4-17-07_____
Paul Chiprez                       Date

IN ACCORDANCE WITH SECTION 2924b OF THE CALIFORNIA CIVIL CODE, REQUEST IS HEREBY MADE BY THE TRUSTOR THAT A COPY OF ANY NOTICE OF DEFAULT AND A COPY OF ANY NOTICE OF SALE UNDER DEED OF TRUST RECORDED ON November 14, 2006 in Book _____, Page _____ Official Records of Santa Clara County (or filed for record with Recorder's Serial Number 19186172 of same County), California affecting the Property described on the front of this instrument executed by Paul Chiprez as Trustor in which NationStar Mortgage LLC is named as Beneficiary, and Fidelity National Title as Trustee, be mailed to: Residential Capital Mortgage Income Fund, LLC at 4870 Viewridge Ave #100, San Diego, CA 92123.

STATE OF CALIFORNIA } ss.
COUNTY OF Santa Clara }

On __April 17__, 2007 before me, __Rose Shea__, notary public, personally appeared __Paul Chiprez__ _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of the person(s) acted, executed the instrument.

_____Rose Shea_____
Signature of Notary Public

WITNESS my hand and official seal.

ROSE SHEA
COMM. # 1423791
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
COMM. EXP. JULY 9, 2007

Order No. 4070975

## Exhibit "A"

Lot 12 in Block 27, in the City of San Jose, as shown and delineated upon that certain map entitled, "Map of the second subdivision of the Lendum Tract" and which map was recorded May 14, 1988, in the office of the County Recorder of Santa Clara, State of California, in the Book "C" of Maps at Page 80.

# EXHIBIT "E"

# BILLING STATEMENT

**COMPANY**

Elite Loan Servicing
3525 Del Mar Hghts Rd #862
San Diego, CA 92130
(855)-239-7692

**BORROWER**

Paul Chiprez
1638 Whitton Ave.
San Jose CA 95116

Property: 1638 Whitton Ave. San Jose CA 95116

☐ Check here for a change of mailing address or phone number(s). Please provide all corrections on the reverse side.

| ACCOUNT NO. | 2007040201 |
|---|---|
| STATEMENT CLOSING DATE | 1/15/2014 |

**STATEMENT SUMMARY**

| | | |
|---|---|---|
| Past Due Amount | + | $10,746.84 |
| Current Payment Amount | + | $280.52 |
| Trust/Escrow Payment | + | $0.00 |
| Other Payments | + | $0.00 |
| Deferred Charges | − | $0.00 |
| **Minimum Payment Due** | = | **$11,027.36** |
| **Payment Due Date** | | **1/15/2014** |
| Late Charge Due After 01/25/2014 | | $0.00 |
| Credit Limit | | $45,200.00 |
| Available Credit | | -$21,244.73 |
| Reserve Balance | | $0.00 |
| Impound Balance | | $0.00 |
| **ANNUAL PERCENTAGE RATE** | | 5.000% |
| Daily Periodic Rate | | 0.013699% |
| Average Daily Balance | | $66,058.71 |

*PLEASE DETACH THE TOP PORTION OF THIS STATEMENT AND RETURN IT WITH YOUR PAYMENT*

## ACCOUNT ACTIVITY

| Date | Reference | Description | Charges | Credits | Balance |
|---|---|---|---|---|---|
| 12/16/2013 | | Balance Forward | | | $66,164.21 |
| 01/15/2014 | | Interest Charge | $280.52 | | $66,444.73 |
| | | | $280.52 | $0.00 | |

## INTEREST CHARGE SUMMARY

| Balance Date | Daily Balance | Days | Daily Periodic Rate | Interest Rate | Finance Charges |
|---|---|---|---|---|---|
| 12/16/2013 | $66,058.71 | 31 | 0.013699% | 5.000% | $280.52 |
| | | 31 | | | $280.52 |

Note: Daily balances exclude reserve balances, impound balances, late charges.

**SOLOMON, GRINDLE, SILVERMAN & WINTRINGER**
A PROFESSIONAL CORPORATION

12651 HIGH BLUFF DRIVE, SUITE 250
SAN DIEGO, CALIFORNIA 92130
TELEPHONE: (858) 793-8500
FAX: (858) 793-8263
www.sgswlaw.com

MICHAEL M. WINTRINGER
EXTENSION 235
E-MAIL: MIKE@SGSWLAW.COM

FILE NO.
9268.0055

April 14, 2014

*VIA FACSIMILE (213-622-4858)*
*& FIRST CLASS MAIL*

H. Michael Song, Esq.
PARKER STANBURY LLP
444 South Flower Street, 19th Floor
Los Angeles, CA 90071-2901

    RE:    **Borrower: Paul A. Chiprez**
               **Property Address: 1638 Whitton Avenue, San Jose, CA 95116**

Dear Mr. Song:

       This firm represents MOAD LLC ("Lender"), the current holder of the second trust deed against the above-referenced property. We are in receipt of your letter dated March 24, 2014 to Lender's servicer (Elite Loan Servicing), in which you demand that Lender cease from sending the Borrower any further statements of his account balance with Lender as a result of the discharge obtained by the Borrower in Northern District of California (San Jose) Bankruptcy Court Case No. 10-60223-ASW (the "Bankruptcy Case").

       While our client is certainly willing to refrain from sending the Borrower any further statements regarding this loan, it would appear that Lender's deed of trust survived the Bankruptcy Case and remains of record against the subject Property. Notably, although the Borrower's confirmed Chapter 13 plan makes reference to an intent to avoid this lien, according to our review of the Court's docket in the Bankruptcy Case no motion to avoid or other appropriate action was ever taken by the Borrower to do so. If I am mistaken in this regard, please immediately send me copies of any relevant pleadings from the Bankruptcy Case which reflect that the lien was in fact avoided. Otherwise, as you are presumably aware, although the Borrower's personal liability on the loan has now been discharged, the lien remains of record and, unless satisfied in full, Lender's only remedy for enforcement of the same will be to foreclose on the Property.

H. Michael Song, Esq.
April 14, 2014
Page 2

    Once you have had an opportunity to review the above with your client, please contact me to discuss his intentions for satisfying Lender's lien against the Property. In the interim, please be advised that Lender continues to reserve all of its rights and remedies under the loan documents and applicable law, and nothing set forth herein shall constitute a waiver of the same.

    Thank you for your anticipated courtesy and cooperation.

                              Sincerely,

                              SOLOMON, GRINDLE, SILVERMAN
                              & WINTRINGER, a Professional Corporation

                              Michael M. Wintringer

cc: MOAD LLC (via email only)

# EXHIBIT "F"

In re  Paul Andrew Chiprez , Case No. _____

Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Primary residence, single family residence, at 1638 Whitton Avenue, San Jose, CA 95116 | Fee simple | H | 209,575.00 | 432,190.00 |

Sub-Total >   209,575.00   (Total of this page)

Total >   209,575.00

__0__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)